IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JILL B.,[1]

        **Plaintiff,**

      v.

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,**

        **Defendant.**
_____

**Civ. No. 1:23-cv-01169-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

      Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) improperly rejecting Plaintiff's subjective symptom testimony, and (2) finding unpersuasive the medical opinion of Kelsey Fyfe, FNP-BC. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for benefits on November 16, 2020, alleging disability as of November 12, 2020. Tr. 530-43. Following a September 2022 hearing, ALJ Spaulding determined Plaintiff was not disabled in an October 2022 decision. Tr. 19-30. Plaintiff sought review of the hearing decision from the Appeals Council, which they denied in June 2023. Tr. 528-29, 1-7. The ALJ's decision then became final, and now Plaintiff seeks judicial review of the ALJ's decision.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined that Plaintiff had the following severe impairments: chronic vasomotor rhinitis; migraine; eustachian tube dysfunction/otalgia of both ears; and cervical degenerative disc disease. Tr. 21. The ALJ further determined that Plaintiff had the RFC to perform light work with limitations: never climbing ropes, ladders, or scaffolds; no reaching overhead with the bilateral upper extremities; tolerating only moderate noise work environments; needing to avoid exposure to fumes, noxious odors, dusts, gases, smoke, vapors, poor ventilation, rapid changes in temperature, and unprotected heights. Tr. 24. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that there were a significant number of jobs in the national economy available to Plaintiff. Tr. 29. Specifically, the VE identified the following occupation: rental clerk storage. Tr. 29, 62. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 30.

In this appeal, Plaintiff first contends that the ALJ erred by improperly discounting her subjective symptom testimony, including claims that the ALJ impermissibly considered Plaintiff's obesity, the entirety of the objective evidence, and Plaintiff's daily activities. Second, Plaintiff alleges that the ALJ erred by discrediting the medical opinion of Kelsey Fyfe, FNP-BC, including claims that the ALJ's reasons for rejecting the opinion were selective and not supported by substantial evidence.

## I.    <u>Subjective Symptom Testimony</u>

Plaintiff's first claim is that the ALJ failed to provide the required "specific, clear and convincing evidence" to justify rejecting Plaintiff's allegations of her chronic sinus and ear problems, as well as her obesity. Pl.'s Br. 5, 9-10; ECF No. 12. Here, the ALJ found that Plaintiff suffered from the following severe impairments: chronic vasomotor rhinitis; migraine; eustachian tube dysfunction/otalgia of both ears; and cervical degenerative disc disease. Tr. 21. However, in evaluating Plaintiff's claims on these impairments, the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 25.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the

claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id*. (citing *Treichler*, 775 F.3d at 1102). When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "An ALJ is not required to 'believe every allegation of disabling pain.'" *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Moreover, an ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Smartt*, 53 F.4th at 497-98

("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

Here, the ALJ accepted that Plaintiff suffers from sinus issues, headaches and back pain. Tr. 24-25. Plaintiff testified that her head hurts so badly that her "ear is muffled and [she] sound[s] like one [her] grandkids speaking." Tr. 49. In her eyes, Plaintiff feels that she cannot work because she is not dependable. Tr. 50. Because her head hurts and her back aches, Plaintiff testified that she needs to "shut everything out, turn off the lights, [and] take a nap[.]" *Id*. She claims that she must take these one-to-two-hour naps four times per week. *Id*. Plaintiff testified that she uses a "lot of ice packs" and heating pads to offset her pain. Tr. 51. She also testified that she takes prescribed ibuprofen to alleviate her headaches. *Id*. Plaintiff also participates in physical therapy and chiropractic care. *Id*. Plaintiff testified that she can only sit for twenty minutes, can lift ten-to-fifteen pounds, and does laundry every four to five days. Tr. 52-53. Plaintiff's day-to-day routine consists of doing stretches when she gets out of bed, turning on the news, making a cup of tea, getting on her yoga ball to "move stuff around", organizing her kitchen, and then goes back to relaxing. Tr. 55. Plaintiff claims that when she does cook, "she make[s] a meal big enough for days and [she]'ll eat the same things for days at a time." *Id*.

Plaintiff testified that she had sinus surgery but that it did not help her sinus issues that consist of feeling "sick" and having increased "pressure in [her] head[.]" Tr. 57. Finally, Plaintiff testified that she knew "something was off" when her sinuses kept getting worse. Tr. 58-59. She "kept getting headaches and [her] head was hurting" and her symptoms progressed from there. Tr. 59.

The ALJ summarized Plaintiff's testimony as follows:

> In her initial application materials, the claimant alleged she was
> unable to perform full time employment due to sinus issues, ear
> issues, headaches, neck issues, chronic pain, vision issues, pain
> with exposure to loud noises, poor equilibrium, concentration
> issues, pain with exposure to light and head pressure. She claimed
> her symptoms interfered with her ability to engage in activities that
> required lifting, squatting, bending, talking, hearing, seeing, and
> climbing stairs, as well as understanding, remembering,
> concentrating, completing tasks and following instructions.
>
> At the hearing, the claimant reasserted her allegations of ear and
> sinus problems, as well as neck pain. She reported some difficulty
> thinking clearly and concentrating related to her pain and sinus
> pressure. She noted she takes naps for one to two hours, four days
> per week. Despite this, she was able to drive her car to pick up
> groceries or go to appointments, as well as engage in other
> activities like preparing simple meals, watching TV, and doing her
> laundry.

Tr. 25 (internal citations omitted).

The ALJ provided specific, clear, and convincing medical evidence that controverted

Plaintiff's allegations. The record shows as follows:

With regard to Plaintiff's claim of the severity of her chronic vasomotor rhinitis, the ALJ

acknowledged Plaintiff's history of sinus disease. Tr. 25. He also acknowledged Plaintiff's 2018

sinus surgery with continued but intermittent sinus pain and pressure, facial pain, runny nose,

postnasal drip, cough, and blocked ears. Tr. 25-26. However, the ALJ concluded that the record

does not support the severity of her symptoms to the degree alleged. *Id.* The ALJ first cited a

November 2020 allergy test which revealed no allergens and vasomotor rhinitis.[2] Tr. 26, 910,

---

[2] Vasomotor (nonallergic) rhinitis is inflammation of nasal tissues that results in sneezing,
nasal congestion, runny nose or postnasal drip. Unlike allergic rhinitis (or hay fever), the
symptoms are of an unknown cause. Likely, they result from triggers that irritate your nose.

1097, 1102. A 2019 CT scan showed post-surgical changes in the bilateral anterior ethmoidectomies and medial antrostomies, as well as nasal septal deviation, but no evidence of obstructive sino-nasal disease. Tr. 26, 722-23. The ALJ cited another CT scan from January 2021 controverting Plaintiff's claims, as it showed no mucosal thickening in the lateral or anterior ethmoids, the bilateral maxillary sinuses, the bilateral frontal sinuses, or the bilateral sphenoid sinuses, however, there was turbinate hypertrophy and septal deviation. Tr. 26, 930, 934. The ALJ also found that her physical examinations show generally normal findings, i.e., tenderness in the left maxillary sinus, mild nasal turbine, edema and congestion, but normal mucosa, vestibules, and no lesions or inflammation. Tr. 26, 767, 773-74, 777, 812, 828, 838, 841, 845, 849, 853, 856, 860-61, 864, 868, 872, 876, 880, 884, 887, 891, 895, 899, 904, 911, 914, 917, 932, 964, 967, 973, 976, 985, 988, 991, 994, 998, 1002, 1006, 1009, 1012, 1016, 1088, 1101, 1120, 1256, 1260, 1264.

The ALJ concluded that these objective findings have been accounted for in the RFC, as the RFC prevents her exposure to any pulmonary irritants. Tr. 27. Plaintiff presents evidence she argues the ALJ should have considered, but fails to present an argument as to how that evidence would preclude any work activity. At best, Plaintiff's position represents an alternative view of the evidence. But that alternative view cannot support reversal of the agency decision. Rather, if there are two permissible views of the evidence, the Court must defer to the ALJ's decision and not "substitute our judgment for that of the ALJ." *Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

---

Cleveland Clinic, *Vasomotor Rhinitis*, MY.CLEVELANDCLINIC.ORG,
https://my.clevelandclinic.org/health/diseases/17950-nonallergic-rhinitis

Regarding Plaintiff's eustachian tube dysfunction/otalgia of the bilateral ears, the ALJ acknowledged Plaintiff's reports of "chronic ear infections with associated pain, pressure, popping, cracking, and decreased hearing." Tr. 26. However, the ALJ found that audiometric testing from December 2020 and April 2022 demonstrated her "normal hearing with speech reception threshold at 5dB bilaterally and tympanometry results in the bilateral ears were consistent with normal middle ear function[,]" which undermined the severity of her allegations. Tr. 26, 769, 923-24, 1096 ("Word Recognition score in right ear was excellent. Word Recognition score in left ear was excellent."). The ALJ cited a CT scan from June 2021 to further undermine her claims, as the scan demonstrated clear mastoid air cells and middle ear cavities with unremarkable auditory canals, no thickening or abnormality of the tympanic membranes, normal ossicles, and unremarkable semicircular canals and cochlear structures. Tr. 26, 1154. Lastly, the ALJ cited several physical examinations that were inconsistent with Plaintiff's claims, as they showed normal auricles bilaterally, no auricle lesions present, normal external auditory canals, no tympanic membrane perforations, with normal tympanic membrane mobility bilaterally, and intact hearing, but fluid present behind tympanic membrane on the left. Tr. 26, 767, 773, 776-77, 812, 820, 828, 838, 841, 845, 848-49, 853, 856, 860, 863-64, 868, 872, 876, 880, 884, 887, 890-91, 895, 899, 911, 914, 916-17, 926, 931, 964, 967, 970, 973, 976, 985, 988, 991, 994, 998, 1001, 1002, 1006, 1009, 1012, 1016, 1088, 1101, 1115, 1117, 1120, 1256, 1263-64, 1370. Plaintiff again presents an alternative view of the evidence regarding her ear issues, however, the Court declines to substitute its judgment for that of the ALJ. *Robbins*, 466 F.3d at 882. Furthermore, the ALJ adequately accounted for Plaintiff's ear issues in the RFC by limiting her to "moderate noise work environments[.]" Tr. 24.

With regard to Plaintiff's obesity, the ALJ found this impairment to be non-severe. The ALJ reasoned:

> The record documents that the claimant was diagnosed with Class III obesity during the period at issue with a weight of 298 pounds and a height of 5'5", giving her a Body Mass Index (BMI) of approximately 49.6. Pursuant to SSR 19-2p, I considered the effect of the claimant's obesity on her ability to perform routine movement and necessary physical activity within a work environment. Similarly, I have also considered how fatigue caused by the claimant's obesity impacts her physical and mental abilities to sustain work activity. I have considered aggravating effects of the claimant's obesity when determining her residual functional capacity.

Tr. 22 (internal citations omitted).

Plaintiff claims that the ALJ committed reversible error in failing to evaluate the contributory impact of her morbid obesity on her functional capabilities. The Court is not persuaded. In assessing the RFC, the adjudicator must consider only limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." Social Security Ruling ("SSR") 96-8p, *available at* 1996 WL 374184. While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

Here, the ALJ acknowledged that physicians' notes indicate Plaintiff weighed 298 pounds with a height of 5'5", which indicates that her BMI is about 49.6. Tr. 22, 1398. The ALJ also recognized that Plaintiff's obesity could increase her fatigue and affect routine movement in the workplace. Tr. 22. Plaintiff has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. In fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that Plaintiff

is obese, and recommended that she participate in a medically supervised weight loss program. *See* Tr. 85-86, 90, 1127, 1130, 1140, 1393. After weighing the evidence, the ALJ concluded that Plaintiff has the RFC to perform light work: "she can never climb ladders, ropes, or scaffolds. . . She can tolerate no exposure to pulmonary conditions such as fumes, noxious odors, dusts, gases, smoke, vapors, and poor ventilation. . . She can tolerate no exposure to hazards such as unprotected heights." Tr. 24. Based on the record, the ALJ adequately considered Plaintiff's obesity in his RFC determination. Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider. Therefore, the ALJ did not commit reversible error by failing to consider Plaintiff's obesity in determining the RFC.

As shown above, the ALJ considered the entire record. His detailed summary of the evidence in the record on Plaintiff's issues was not a cherry-picked characterization of Plaintiff's physical condition. The ALJ agreed that Plaintiff had the severe impairments of chronic vasomotor rhinitis, migraine, eustachian tube dysfunction/otalgia of both ears, and cervical degenerative disc disease. Tr. 21. However, despite those limitations, the ALJ examined the entire record and provided provide specific, clear, and convincing reasons to support the conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 25. After summarizing many observations from the record, the ALJ accounted for her impairments in the RFC "by restricting the claimant to performing only a reduced range of light exertional work activities, with some associated limitations in postural activities as well as exposure to workplace environmental conditions and hazards." Tr. 27.

This court is "able to reasonably discern the ALJ's path," and that is all that is required of the ALJ. *See Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-01373-HZ, 2017 U.S. Dist. LEXIS 71270, 2017 WL 1927926, at \*7 (D. Or. May 10, 2017) (citation omitted). *Accord Lambert*, 980 F.3d at 1277 ("Our cases do not require ALJ's to perform a line-by-line exegesis of the claimant's testimony....").

Plaintiff also seeks to undermine the ALJ's determinations on her credibility by alleging defects in specific evidence relied upon the ALJ. As shown below, one of the two claims is without merit.

### A. Plaintiff's Daily Activities

Plaintiff claims that the ALJ erred by finding that Plaintiff's daily activities undermine her claim of disability. Discussion of activities of daily living may support the decision to give less weight to symptom testimony in two ways: it may illustrate a contradiction with previous testimony or it may show that activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment.").

Here, the ALJ found that Plaintiff's activities of daily living conflicted with her testimony and demonstrated that her level of functioning was "higher" than alleged. Tr. 27. The ALJ cited Plaintiff's activities of performing adequate self-care, preparing simple meals, going for walks with her daughter, driving a car, using a computer, doing household chores, engaging in hobbies, caring for her pets and house plants, and going to the store. Tr. 27, 607-14. Despite Plaintiff's claims of her inability to do any activities that "required lifting, squatting, bending, talking, hearing, seeing, and climbing stairs," Plaintiff also stated to medical providers that she engages

in "moderate exercise a few times a week" and that her physical therapists have observed Plaintiff "performing her [Home Exercise Plan] regularly." Tr. 27, 1011, 1048, 68 ("She does some daily exercises and stretches"), 418 ("Subjective[:] reports some relief from exercise at home"), 1399 ("Walking around track a few times [a] week but back has been hurting, will join YMCA"). From this evidence the ALJ concluded that "[t]hese activities indicate a higher level of function than alleged by [Plaintiff]." Tr. 27. Such evidence provides specific, clear, and convincing reasons for discounting Plaintiff's testimony. Furthermore, any error here would be harmless because there is other substantial evidence that upholds the ALJ's findings on credibility and job limitations even if the daily living activities are excluded. *Adams v. Kijakazi*, No. 21-16413, 2023 WL 1879247, at *1; *Molina*, 674 F.3d 1115.

### B. Plaintiff's Conservative Treatment

Plaintiff argues the ALJ erred by failing to provide an explanation as to why he deemed Plaintiff's treatment "conservative" for her most disabling conditions. Pl.'s Br. 11; ECF No. 12. The Court agrees. Conservative treatment can be "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d at 750-51. As the ALJ noted, during the relevant period, Plaintiff managed her symptoms largely by participating in physical and massage therapy, cervical traction, antibiotics, muscle and nerve relaxers, steroid injections, steroids, guaifenesin, cetirizine, nasal steroid sprays, saline nasal washes, optic drops, triptans, as well as over-the-counter pain medication and prescription ibuprofen, antihistamines and decongestants. Tr. 27, 809, 815, 882, 911, 949-62, 963, 983, 998, 1011, 1086, 1112, 1123, 1257, 1276, 1284-1360, 1390.

The ALJ concluded that Plaintiff's "treatment has been very conservative, largely physical therapy, as well as over-the-counter and prescription medication. She has not generally

received the type of medical treatment one would expect for a totally disabled individual." Tr.

27. Courts within this circuit have reasoned that when an ALJ uses such a general statement, the

ALJ fails to "elaborate on what medical treatment one would expect for a person totally disabled

by the kind of [physical] conditions the Plaintiff suffers from, nor does the ALJ explain why the

medication Plaintiff took constituted 'conservative treatment.'" *Alfredo C. v. Saul*, No. 6:18-cv-

1460, 2020 WL 836833, at *5 (D. Or. Feb. 20, 2020); *Parker D. v. Saul*, No. 19-CV-1818 W

(AHG), 2021 WL 8153631, at *4 (S.D. Cal. Sept. 22, 2021). As the court in *Alfredo C. v. Saul*

explained, "[o]ther courts have found that a failure to identify what additional treatment a totally

disabled person would obtain suggests that the ALJ impermissibly relied on his own lay medical

opinion." No. 6:18-cv-1460 (D. Or. Feb. 20, 2020), quoting *Schultz v. Colvin*, 32 F. Supp. 3d.

1047, 1060 (N.D. Cal. 2014). The ALJ has done so here, as he failed to explain what treatment a

totally disabled person would receive, nor does he cite any statement by a medical professional

suggesting that Plaintiff's course of treatment was conservative. Tr. 27. In light of this guidance

and the evidence in the record, the ALJ's "conservative treatment" rationale for discounting

Plaintiff's symptom testimony is not a clear and convincing reason supported by record

evidence. However, because the ALJ offered a clear and convincing rationale for rejecting

Plaintiff's testimony: (1) her daily activities contradicted her testimony on her physical

disabilities and (2) the medical record failed to support—or directly contradicted—her testimony

on at least three topics, the error here was harmless. *See Carmickle v. Comm'r. Soc. Sec. Admin.*,

533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding two invalid reasons for an adverse credibility

finding were harmless error considering the remaining valid rationale); *Green v. Saul*, 830 F.

App'x 922, 923 & n.2 (9th Cir. 2020) (holding four invalid reasons for an adverse-credibility

finding were harmless considering the two remaining valid reasons).

II.    **The ALJ did not err in his Evaluation of the Medical Opinion from Kelsey Fyfe,**
**FNP-BC**

Plaintiff next argues the ALJ erred in finding unpersuasive the medical opinion of Kelsey
Fyfe, FNP-BC because the ALJ's "reasons [were] selective and [were] not supported by
substantial evidence." Pl.'s Br. 15; ECF No. 12.

Because Plaintiff filed her application after March 27, 2017, revised regulations
regarding the evaluation of medical source opinions apply to her claim. *See Revisions to Rules*
*Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified
at 20 C.F.R. pts. 404 & 416). The revised rules provide that the Social Security Administration
will evaluate medical opinions according to the following factors: supportability; consistency;
relationship with the claimant; specialization; and other factors such as the medical source's
familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. §
404.1520c(c)(1)-(5); *see Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *7 (D.
Or. Oct. 28, 2020). "Supportability" and "consistency" are the most important factors to be
considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is
required to explain how both factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2).
"Supportability means the extent to which a medical source supports the medical opinion by
explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,791-
92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical
opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources
in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Additionally, "[t]he ALJ may but
is not required to explain how other factors were considered, as appropriate, including
relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of

examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).

In her opinion, NP Fyfe endorsed Plaintiff's complaints of ear and jaw pain, severe headaches, and sinus pain. Tr. 1082. NP Fyfe opined that because of these symptoms, Plaintiff needs to rest for at least "20-60 min[utes]" every few hours due to headache, sinus pressure, and poor concentration. Tr. 1084. NP Fyfe also opined that Plaintiff can sit for four hours and stand or walk for four hours during an eight-hour workday. Tr. 1083. Further, NP Fyfe opined that Plaintiff has good fine and gross motor strength, but that she struggles with bending over to perform tasks, as this exacerbates his symptoms. Tr. 1084. Lastly, NP Fyfe opined that Plaintiff would be off-task twenty-five percent or more of a workday and be absent more than four days per month due to her headaches, sinus pressure, and her sensitivity to sounds. Tr. 1085.

Plaintiff contends the ALJ erred in finding NP Fyfe's opinion unpersuasive, but fails to provide a particularized argument about the ALJ's error, stating that his reasons were "selective and [were] not supported by substantial evidence." Pl.'s Br. 15; ECF No. 12. To bolster these arguments, Plaintiff states the "ALJ's suggestion that NP Fyfe was required to 'cite to. . . evidence' in her written opinion" rests on a mistaken factual premise, and that NP Fyfe's opinion was consistent with her treatment notes. Pl.'s Br. 14; ECF No. 12. Plaintiff also asserts that although the "ALJ ultimately cherry-picked essentially normal examination findings, he first acknowledged positive findings documented throughout the record, which are entirely consistent with NP Fyfe's conclusions." *Id*. at 15. Finally, Plaintiff asserts that the ALJ declined to consider Plaintiff's most disabling symptoms and made non-specific findings related to normal

examination findings, and that the ALJ's reasons to reject NP Fyfe's opinion were selective and unsupported by substantial evidence. *Id*. However, none of these arguments reveal a particularized issue about how the ALJ committed reversible error pertaining to either supportability or consistency, which ALJs are specifically directed to address. *See Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) ("ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'"). Further, it seems that Plaintiff's position again directs the Court to consider an alternative view of the evidence, as she urges NP Fyfe's treatment notes were consistent with what she wrote in her opinion. But that alternative view cannot support reversal of the agency decision, nor does the ALJ assert that NP Fyfe's treatment notes are completely benign. *See Robbins*, 466 F.3d at 882.

The ALJ sufficiently found NP Fyfe's medical opinion to be unpersuasive. Though Plaintiff is correct that NP Fyfe did not have to "cite to [specific] evidence to support her conclusions[,]" the ALJ must consider if she supported her medical opinion by explaining the relevant objective medical evidence or by at least providing "supporting explanations" for her opinion. *See Woods*, 32 F.4th at 791-92; 20 C.F.R. § 404.1520c(c)(1). Here, NP Fyfe failed to provide any supporting explanations for her more extreme limitations, which the ALJ observed by stating "the extreme limitations outlined such as the severe degree to time off task and increased level of absenteeism, are [] not supported by the evidence of record. . . while the record supports a history of headaches, there is nothing to support frequency noted by the nurse practitioner." Tr. 28. The only semblance of a supporting explanation NP Fyfe provided was her answer to question five on the treating source statement, which asked her to describe Plaintiff's "signs (relevant clinical findings, test results, etc[.])." Tr. 1082. NP Fyfe's response was that

Plaintiff was evaluated by an ENT, psychiatrist, multiple MRIs, and CTs, but even then, failed to provide an explanation as to which or how such signs relate to her opinion that Plaintiff would miss more than four days per month due to headaches, sinus pressure, and sensitivity to sounds. *Id*. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). As discussed, the ALJ cited several examples in the record that demonstrate the findings from Plaintiff's CT scans were largely benign. Tr. 26-27, 722-23, 930, 934. Regarding her sensitivity to sounds, the ALJ noted Plaintiff's audiometric testing from both 2020 and 2022, demonstrating normal results. Tr. 26, 769, 923-24, 1096. Finally, the ALJ addressed Plaintiff's complaints surrounding her headaches, which he found to be at odds with both Plaintiff's testimony and the opinion of NP Fyfe, as the record demonstrates waxing and waning symptoms. *See* Tr. 28, 26, 904 ("Not Present- Bleeding Gums, Earache, Headache, Hearing Loss, Seasonal Allergies, Sinus Pain, Visual Disturbances and Voice Changes"),1390 ("Neurological: Negative for headaches"), 1467 ("Neurological: Positive for headaches"), 116 ("Neurological: Negative for weakness and headaches"), 164 (Not Present - Headache), 1015 ("Admits: headaches, sinus pain, nasal congestion, nasal discharge, postnasal drip"). Plaintiff fails to cite any evidence that supports NP Fyfe's opinion, particularly the part of her opinion addressing the level of absenteeism Plaintiff would experience due to her headaches, sinus pressure, and sensitivity to sounds. *See* Pl.'s Br. 14; ECF No. 12, Tr. 1085. The only evidence Plaintiff provides is unrelated to NP Fyfe's opinion and addresses only Plaintiff's MRI results related to her degenerative disc disease, which NP Fyfe did not state would contribute to her absences from work. Tr. 1085.

In sum, the ALJ acknowledged that Plaintiff's impairments resulted in some functional limitations, but concluded she was not as limited as she, or NP Fyfe, claimed. In doing so, the ALJ provided a thorough summary of the record as a whole and supported his conclusions with substantial evidence.

## **CONCLUSION**

The ALJ's decision was supported by substantial evidence and, to the extent the ALJ erred, any error was harmless. The Commissioner's final decision is therefore AFFIRMED. IT IS SO ORDERED.

DATED this 18th day of September, 2024.

/s/ Michael McShane
Michael J. McShane
United States District Judge